## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| TRACY JACKSON | : | |
| 728 E. Princess St. | : | |
| York, PA 19141 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: |
| | : | |
| v. | : | |
| | : | |
| UNITED NATURAL | : | **JURY TRIAL DEMANDED** |
| FOODS, INC. d/b/a UNFI | : | |
| 313 Iron Horse Way | : | |
| Providence, RI 02908 | : | |
| | : | |
| Defendant. | : | |

_____ :

### CIVIL ACTION COMPLAINT

Tracy Jackson (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by United Natural Foods, Inc. (*hereinafter* referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 200d *et seq*.), 42 U.S.C. Section 1981, and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

_____

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

1

## JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's future state law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.     This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.     Pursuant to 28 U.S.C. § 1391(b)(1) an (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5.     Plaintiff is proceeding herein (in part) under Title VII after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

2

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual with an address set forth in the caption.

8.      Defendant United Natural Foods, Inc. d/b/a UNFI (*hereinafter* "Defendant") is a corporation that provides wholesale distribution of health and specialty foods throughout the United States (including Pennsylvania). Defendant is headquartered at the address set forth in the above caption. Plaintiff was hired through and worked out of Defendant's facility located at 225 Cross Farm Lane, York, PA 17406.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted, at all times relevant herein, in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Even though Defendant is headquartered in Rhode Island, on or about October 31, 2022, Defendant hired Plaintiff as a Class A CDL Driver for its 225 Cross Farm Lane, York, PA 17406 location.

12.    During Plaintiff's training period, the approximate first two (2) months of her employment with Defendant, Plaintiff was directly supervised by Doug (Caucasian – last name unknown – *hereinafter* "Doug").

13.    Throughout her tenure with Defendant, Plaintiff was a dedicated and hard-working employee who performed her job well.

14.    At the time of Plaintiff's employ with Defendant, Defendant primarily employed non-black individuals.

15.    Plaintiff is a black (African American) female.

16.    Almost immediately after Plaintiff commenced her employment with Defendant, Defendant began subjecting Plaintiff to overt race discrimination and a racially hostile work environment.

17.    For example, in or about the week of November 6, 2022, Plaintiff was paired with Trainer, Clint (Caucasian – last name unknown – *hereinafter* "Clint").

18.    While training with Clint, Plaintiff was subjected to racial slurs and discriminatory comments and treatment based on her race. By way of example, but not intended to be an exhaustive list, Clint would:

    a.    Refer to Plaintiff as "nigger";

    b.    Make comments about "y'all's holiday" –referring to Kwanza, assuming Plaintiff celebrated Kwanza because of her race;

    c.    Treat Plaintiff in a rude and demeaning manner, unlike her non-black counterparts, by cursing at her; and

     d.     Intimidated her by routinely threatening to have her terminated.

19.     As a result of the aforesaid instances of demeaning, discriminatory, and disparate treatment by Clint, on or about November 9, 2022, Plaintiff made a complaint to Doug regarding Clint's racially discriminatory behavior and comments (discussed *supra*).

20.     However, instead of meaningfully investigating or addressing Plaintiff's complaints of discrimination and harassment, Doug instructed Plaintiff to "let it go," thereby discouraging Plaintiff from making additional complaints and/or escalating her complaints of race discrimination to higher levels of management.

21.     As a result of Defendant's inaction and fearing retribution, Plaintiff did not further escalate her complaints of race discrimination and hostile work environment until early-January of 2023 (discussed further *infra*).

22.     In or about early-January of 2023, during a training ride-along with Supervisor of Transportation, Scott (Caucasian – last name unknown – *hereinafter* "Scott"), Plaintiff reported Clint's aforesaid discriminatory racial slurs, comments, and treatment (*see* Paragraph 18, *supra*).

23.     In response to Plaintiff's aforesaid complaints of discrimination in or about early-January of 2023, Scott assured Plaintiff that he would escalate her concerns to Human Resources ("HR") and that Defendant would take prompt action to address the same.

24.     Shortly thereafter, however, when Plaintiff followed up with Scott to determine the status of her complaints of race discrimination, Scott informed Plaintiff only that HR never responded, without further explanation or assurances that her concerns were being addressed.

25.     Once her training period concluded, in or about mid-January of 2023, and she began to drive on her own, Plaintiff fell under the supervision of female Supervisor of Transportation, Shawnacee (Caucasian – last name unknown – *hereinafter* "Shawnacee").

26.     The aforementioned racial discrimination, hostile work environment, and disparate treatment continued unabated under Shawnacee's supervision. For example, unlike Plaintiff's non-black counterparts, Shawnacee:

> a.     Subjected Plaintiff to hostility and animosity and regularly talked down to her;
>
> b.     Issued Plaintiff pretextual discipline that other non-black employees were not subjected to;
>
> c.     Selectively enforced policies against Plaintiff;
>
> d.     Referred to Plaintiff as "loud" and "angry," stereotyping her as an "angry black woman";
>
> e.     Kept Plaintiff and Markayla (African-American – last name unknown – *hereinafter* "Markayla") under close surveillance;

f.    Nit-picked Plaintiff and Markayla for minor and/or manufactured issues that their non-black counterparts were not subjected to, on a regular basis;

g.    Assigned her to more labor-intensive assignments than her non-black counterparts; and

h.    Took shifts away from Plaintiff, thereby affecting her compensation.

27.    In addition to the foregoing acts of discrimination and disparate treatment, Shawnacee also falsely accused Plaintiff of smoking in her truck and subjected her to a pretextual disciplinary write up.

28.    When Plaintiff informed Shawnacee she was not smoking in her truck but that other Caucasian males had smoked in their trucks, Shawnacee ignored Plaintiff's complaint and continued to issue her pretextual and/or manufactured discipline.

29.    Plaintiff expressed concerns about Shawnacee's aforesaid discriminatory treatment to Defendant's management on several occasions.

30.    Once again, rather than take Plaintiff's concerns of discrimination and hostile work environment seriously by investigating or addressing the same, Defendant subjected Plaintiff to further hostility, animosity, discrimination and retaliation.

31.     For example, on or about April 25, 2023, Plaintiff specifically informed Shawnacee that she felt there was a lot of friction between them and that there was a double standard when it came to herself/Markayla and other non-black individuals.

32.     However, Shawnacee reacted completely unprofessionally to Plaintiff's complaints of race discrimination and disparate treatment by yelling in Plaintiff's face with her fists balled up by her side.

33.     Plaintiff felt immediately threatened, was understandably shaken, and extremely upset up by Shawnacee's hostile physical and verbal reaction to her complaints, to the point that Plaintiff did not feel it was safe to drive her truck.

34.     Therefore, Plaintiff contacted Dispatcher, Raymond (African-American – last name unknown – *hereinafter* "Raymond") consistent with Defendant's call out policies and procedures and informed him that she would be leaving for the day.

35.     Thereafter, on or about April 29, 2023, Plaintiff was contacted by Operations II Manager, John Johnson (*hereinafter* "Johnson") and asked about whether she left work on or about April 25, 2023, and to whom she had called out.

36.     Plaintiff responded in the affirmative to Johnson's aforesaid question about leaving work on or about April 25, 2023, and further informed him that she had called out to Raymond in dispatch (as per Defendant's callout policies and procedures).

37.     Immediately thereafter, Plaintiff was retaliatorily suspended pending an investigation for allegedly failing to notify a supervisor that she was leaving work on or about April 25, 2023.

38.     Notably, at no time during Plaintiff's suspension did Defendant contact Plaintiff regarding the alleged aforesaid investigation.

39.     Instead, on or about May 1, 2023, Johnson abruptly terminated Plaintiff's employment purportedly because "they don't want you here," referring to Defendant's management.

40.     Defendant's reason for Plaintiff's termination is completely discriminatory and/or pretextual because: (1) Plaintiff worked hard during her employment with Defendant and performed her job well; (2) Plaintiff followed Defendant's policies and procedures in calling out on April 25, 2023, following Shawnacee's racially discriminatory and threatening behavior toward her; (3) Defendant failed to meaningfully address or investigate Plaintiff's numerous aforesaid complaints of race discrimination and hostile work environment (discussed *supra*); (4) during her 6-month employment tenure with Defendant, Plaintiff had never called out of work to a supervisor, nor had she been counseled or corrected for failing to do the same; (5) Defendant failed to contact Plaintiff during her retaliatory suspension for their purported investigation; and (6) Defendant terminated Plaintiff's employment just **six (6) days** following her most recent complaints to Defendant's management of race discrimination and a hostile work environment.

41.     Plaintiff believes and there for avers that she was subjected to a hostile work environment, pretextual discipline (including but not limited to suspension), and retaliation because of her race and her complaints of race discrimination and a hostile work environment.

42.     Plaintiff also believes and therefore avers that her race was a motivating and/or determinative factor in the termination of her employment with Defendant.

## COUNT I
## Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)

43.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44.     During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, and a hostile work environment through racial slurs, disparate/derogatory treatment, and pretextual admonishment and/or discipline as outlined *supra* because of her race.

45.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but her concerns were ignored; and instead, Defendant's management continued to subject Plaintiff to hostility, animosity, and disparate treatment because of her race.

46.     Plaintiff was then suspended and eventually terminated on or about May 1, 2023, for completely pretextual reasons (set forth *supra*).

10

47.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment, pretextual discipline (including but not limited to suspension), and retaliation, because of her race and her complaints of race discrimination and a hostile work environment.

48.     Plaintiff also believes and therefore avers that her race was a motivating and/or determinative factor in Defendant's decision to terminate her employment.

49.     These actions as aforesaid constitute violations of Title VII.

**COUNT II**
**Violation of 42 U.S.C. Section 1981**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

50.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51.     During Plaintiff's employment with Defendant, she was subjected to discrimination, retaliation, and a hostile work environment through racial slurs, disparate/derogatory treatment, and pretextual admonishment and/or discipline as outlined *supra* because of her race.

52.     Plaintiff objected to/complained of the aforementioned instances of race discrimination and disparate treatment by Defendant's management, but her concerns were ignored; and instead, Defendant's management continued to subject Plaintiff to hostility, animosity, and disparate treatment because of her race.

53.     Plaintiff was then suspended and eventually terminated on or about May 1, 2023, for completely pretextual reasons (set forth *supra*).

54.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment, pretextual discipline (including but not limited to suspension), and retaliation because of her race and her complaints of race discrimination and a hostile work environment.

55.     Plaintiff believes and therefore avers that but for her race, Defendant would not have terminated her employment.

56.     These actions as aforesaid constitute violations of Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court

deems just, proper and appropriate (including but not limited to damages for

emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and

reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this

Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:     _____

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  April 23, 2024

13